521 So.2d 273 (1988)
Jesse L. KELLER, Appellant,
v.
Valerie K. KELLER, Appellee.
No. 86-1952.
District Court of Appeal of Florida, Fifth District.
March 3, 1988.
*274 G. Russell Petersen, P.A., Vero Beach, for appellant.
Stanley Wolfman and Harry C. Greenfield of Stanley Wolfman, P.A., Merritt Island, for appellee.
COBB, Judge.
Appellant, Jesse Keller, seeks review of a final judgment of dissolution, which awarded appellee, Valerie K. Keller, the appellant's 50% interest in a Cocoa restaurant; $350 per week as permanent, periodic alimony; and title to a Mercedes automobile.[1] In addition to arguing that the trial court abused its discretion in these awards, appellant also contends that no award at all was proper, since the marriage was void ab initio based on his prior marriage, which was dissolved via a Mexican divorce.
We affirm the trial court's ruling denying appellant's motion to dismiss the petition for lack of subject matter jurisdiction based on his prior marriage. The facts presented below show that appellant's first marriage began in 1946, and that he obtained a divorce from his first wife by going into Mexico in 1964 and obtaining a decree. The parties were married shortly thereafter. The record supports the trial court's finding that appellee did not in any way participate in the divorce, and its determination that under the facts of this case appellant is estopped to claim or assert its invalidity.
Restatement (Second) of Conflict of Laws § 74 (1971), states:
A person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so.
The Committee Note explains the scope of the rule as follows:
The rule may be applied whenever, under all the circumstances, it would be inequitable to permit a particular person to challenge the validity of a divorce decree. Such inequity may exist when action has been taken in reliance on the divorce or expectations are based on it or when the attack on the divorce is inconsistent with the earlier conduct of the attacking party.
Restatement (Second) of Conflict of Laws § 74 comment b (1971).
In a case substantially similar to the instant case, McIntyre v. McIntyre, 211 N.C. 698, 191 S.E. 507 (1937), the North Carolina Supreme Court was faced with a situation where the husband, with the knowledge of his future second wife, dissolved his marriage with his first wife in an invalid Nevada proceeding. When the second wife petitioned for alimony, the court held the husband to be estopped from questioning the validity of the Nevada decree that he obtained. The court said that voiding the decree would "not seem to be in accord with reason and justice, ... when new rights and interests have arisen as a result of his second marriage." 211 N.C. at 699, 191 S.E. at 507. See also Mayer v. Mayer, 66 N.C. App. 522, 311 S.E.2d 659 (1984), review denied, 311 N.C. 760, 321 S.E.2d 140 (1984).
No Florida case has dealt specifically with the facts presented in the instant case; however, several decisions have touched on the issue of estoppel in the context of allegedly void marriages. In Alexander v. Colston, 66 So.2d 673 (Fla. 1953), the issue was ownership of three parcels of land. The land was titled in the name of "Roman Logan and Callie Logan, his wife." Roman had married Callie in 1939, after deserting his first wife, Maggie, in 1911. After the desertion, Maggie entered into a bigamous marriage, which continued at the time of Roman's death in 1948. In an estate proceeding following his death, Maggie and two children born from her marriage with Roman filed suit against Callie, asking to *275 be declared owners of the parcels of land. The lower court held that Callie was the fee simple owner of the three tracts. This determination was affirmed by the supreme court. The court noted the defense raised by Callie, which alleged that at the time of the marriage she was unaware that Roman was already legally married to Maggie, and that she acted in reliance on the marital contract, and therefore at all times during his life Roman would be estopped to deny the validity of the marriage, and also to deny Callie's right to take the property by survivorship. The supreme court held that Callie was an innocent party, with Roman being the actual perpetrator of the fraud. The court determined that since Roman would have been estopped during his lifetime from contending the estate was void because of the bigamous marriage, his heirs were also bound by the estoppel.
In Astor v. Astor, 107 So.2d 201 (Fla. 3d DCA 1958), cert. denied, 120 So.2d 176 (Fla. 1959), the court was faced with an appeal from an order of the trial court dismissing the appellant's suit. The suit attempted to set aside an earlier separate maintenance decree (which had been affirmed by the supreme court) on the basis of a New York decree declaring invalid a Mexican divorce. The validity of the Mexican divorce formed the basis of the earlier separate maintenance decree. The Third District quoted the trial court's initial findings in the separate maintenance action as follows:
The defendant, asserting that he has not been divorced from a former wife because the decree of a Mexican court sought and obtained by him is void, contends that the parties are not husband and wife. The contention, in my opinion, is not tenable. It is my view that he cannot question the validity of the Mexican decree because he not only sought and procured it, but took advantage of it by remarrying.
107 So.2d at 203.[2] The court went on to hold that the Florida decree estopping Astor from using the invalidity of the Mexican divorce was res judicata as to the parties and, thus, was binding on the appellant.
In Dawson v. Dawson, 164 So.2d 536 (Fla. 1st DCA 1964), the alleged wife brought suit for alimony unconnected with divorce. The husband answered that the parties were not married. The lower court found that the parties were indeed not legally married, but that the husband was estopped to raise the defense against the wife's claim for support. The facts revealed that the wife went to Mexico with the husband with knowledge of his intent to procure a Mexican divorce from his lawful wife, who was an inmate at the state mental hospital, and that the parties thereafter engaged in a Mexican marriage ceremony. The parties held themselves out as married for approximately eight years. The court noted that their relationship was "meritricious from the beginning and they were both guilty of bad faith in flaunting the laws of Florida by resorting to a spurious divorce and falsely parading as husband and wife." 164 So.2d at 538. The court also noted that on at least one occasion, well before the suit was filed, the validity of the purported marriage was brought into question, but that the wife took no steps to have the subject adjudicated. The court ultimately determined that estoppel would not apply, and held as follows:
In Miami Shores Village v. Wm. N. Brockway Post No. 124 of American Legion, 156 Fla. 673, 24 So.2d 33 (1945), the Florida Supreme Court refused to apply the doctrine of equitable estoppel where the parties `acted while red flags were flying'. In this case they were hoisted all about the place. Good faith is not to be presumed on the part of a mature woman who, as in the instant case, enters into a marriage with a man whom she knows to have been recently married to a living spouse, who has no evidence of a lawful divorce having been *276 granted, and who is aware of a surreptitious attempt on the part of the prospective husband to shake off the bonds of his prior marriage by a cooked-up Mexican decree of divorce. In pari delicto potior est conditio defendentis. It was error to award alimony to appellee under the circumstances of this case.
164 So.2d at 540.
The instant case is clearly distinguishable from Dawson, in that the evidence shows, and the trial court found, that appellee did not take any part in the procurement of the Mexican divorce, and there was nothing in the record to indicate that even if she knew of the divorce, that she had any reason to know that it was not effective. The parties in the instant case were married approximately 20 years, with no allegation of the marriage being void until a claim was made for alimony and property by the wife in the dissolution proceeding. The trial court's determination that appellant should be estopped from raising this defense was proper and, thus, affirmed. See also Seoane v. Seoane, 514 So.2d 430 (Fla. 3d DCA 1987); Arnold v. Arnold, 500 So.2d 739 (Fla. 3d DCA 1987).
We reverse the award of appellant's interest in the Cocoa restaurant and real property used in connection with it, and the award of the Mercedes to appellee. Appellant claims that the award of the restaurant is improper, since his interest in it was his separate property, and no claim for special equity or equitable distribution of assets has ever been made or shown. Appellant also contends that he will be greatly harmed by the transfer of the property, which he claims provides him with half of his income. The appellee responds by stating initially that the asset is not separate property, but a marital asset, since the restaurant relocated during the marriage, and that even assuming the restaurant is considered the husband's sole property, the enhanced value is subject to equitable distribution. Appellee claims this relief was requested via the request for lump sum alimony in the pleadings.
Marital assets are those assets acquired by the parties during the marriage which are created or produced by their work efforts, services or earnings. Gardner v. Gardner, 452 So.2d 981, 983 (Fla. 5th DCA 1984). The increased value of assets solely owned by one spouse prior to the marriage should be considered marital assets subject to equitable distribution to the extent their increased value was the result of either one or both spouses' work efforts, or the expenditure of marital funds or earnings of the parties. See Crapps v. Crapps, 501 So.2d 661 (Fla. 1st DCA), review denied, 511 So.2d 297 (Fla. 1987); Sanders v. Sanders, 492 So.2d 705 (Fla. 1st DCA 1986).
In the instant case, the dramatically increased value of the Cocoa restaurant came about from the appellant's efforts during the marriage. Thus, under the cases cited above, this increase in worth would be considered a marital asset. However, rather than considering the increase as a marital asset, the court, by awarding the appellant's entire interest in the restaurant to the appellee, in effect granted appellee a special equity in the property, which was neither pled nor proven below. This was error and, accordingly, is reversed and remanded for the trial court to determine whether appellee is entitled to a share of the increase in value of the restaurant as an equitable distribution.
The problem with the award of the Mercedes is that it was owned by a corporation in which the appellant owned 87% of the stock, not by the appellant himself. This corporation was not joined as a party and, thus, the trial court had no power to transfer this corporate asset. Feldman, 390 So.2d 1231 (Fla. 3d DCA 1980). See also Ashourian v. Ashourian, 483 So.2d 486 (Fla. 1st DCA 1986); Noe v. Noe, 431 So.2d 657 (Fla. 2d DCA 1983).
We find no abuse of discretion in the award of permanent, periodic alimony. See Laman v. Laman, 490 So.2d 985 (Fla. 5th DCA), review denied, 500 So.2d 544 (Fla. 1986); Neumann v. Neumann, 413 So.2d 1203 (Fla. 3d DCA 1982). However, since all the items of distribution are interrelated, on remand the trial court may in *277 its discretion revisit this award. See Rico v. Rico, 487 So.2d 1161 (Fla. 5th DCA 1986); Kuehn v. Orlosky, 470 So.2d 831 (Fla. 2d DCA 1985). We find the appellant's remaining point on appeal without merit. In summary, we affirm the final judgment of dissolution, with the exception of the award of appellant's interest in the Cocoa restaurant and the Mercedes, which we reverse. The case is remanded for further proceedings consistent with this opinion.
AFFIRMED in part; REVERSED in part; and REMANDED.
DAUKSCH, J., and UPCHURCH, F.D., Jr., Judge, Retired, concur.
NOTES
[1] In addition to the awards mentioned above, the court gave appellee the husband's interest in a home in Brevard County and one in Colorado, with the requirement that the husband pay the mortgages on both.
[2] The supreme court opinion reviewing the initial separate maintenance decree, Astor v. Astor, 89 So.2d 645 (Fla. 1956), did not discuss estoppel, and, according to the Third District's opinion, no cross-appeal on that basis was filed.