COPE, Judge
(dissenting).
I respectfully dissent.
Gladys Capo, the decedent, married her first husband, bore two children, and petitioned for divorce. Before the divorce decree was entered, she married her second husband, appellant Jose Capo. A daughter, Josette, was born of the second marriage. Subsequently a divorce decree was entered, dissolving the first marriage. Later, Gladys Capo and the child of the second marriage were killed in an automobile accident.
Jose Capo brought a claim for damages for the death of Gladys Capo and the child under the Wrongful Death Act, and made a claim for distribution as the surviving spouse under Florida’s laws of intestate succession. Appellee Eric Borges, as guardian of the two children of the first marriage, opposed Jose Capo’s claim to share in Gladys’ estate, and opposed his claim for the wrongful death of Gladys.[1]
Jose Capo contended in the trial court that he was an innocent spouse who did not know that Gladys’ first marriage had not been dissolved at the time of the second marriage. The trial court commenced an evidentiary hearing on Borges’ motion to determine heirs. After hearing Borges’ witnesses, the trial court ruled as a matter of law that it was irrelevent whether or not Capo knew Gladys had not been divorced at the time of their marriage. The court refused to allow Capo to put on his case, but did allow Capo to proffer his own testimony and that of four other witnesses. The trial court announced that for purposes of the ruling, the court would accept as true Capo’s assertion that he was an innocent spouse.[2] The trial court then ruled against Capo, reasoning that, even accepting Capo’s contentions, the second marriage was nonetheless void ab initio. The trial court therefore barred Jose Capo’s claims relating to Gladys Capo.
It is clear that the trial court erred as a matter of law, and Jose Capo is entitled to a trial on the innocent spouse issue. Florida has long recognized the principle that the invalidity of a bigamous marriage cannot be asserted against an innocent spouse. Alexander v. Colston, 66 So.2d 673 (Fla.1953); see Lambert v. Lambert, 524 So.2d 686 (Fla. 4th DCA), review denied, 534 So.2d 400 (Fla.1988); cf. Keller v. Keller, 521 So.2d 273, 274-75 (Fla. 5th DCA 1988). The parties disagree as to whether Capo knew the prior marriage had not been dissolved when he and Gladys married. Capo is entitled to an adjudication on that point, and if he establishes he was an innocent spouse, he is entitled to relief.[3]

.Borges concedes that Capo is entitled to recompense for the wrongful death of Josette.

. The court:
“Assuming all that to be true, he still, in my opinion, is not a surviving spouse because there was a valid existing marriage between the decedent and Eric Borges which was not dissolved.
Assuming he had no knowledge, which is what your proffer says, then they get married, that is a void marriage, not valid, but void, because one party is incapable of contracting to a marriage and then she gets divorced and assuming he had no knowledge and there still is no marriage and the only one they entered into is the one that was void, he is not a surviving spouse. He is not an heir of the decedent.”

. The considerations cited in footnote 1 of the majority opinion do not dictate otherwise. It is the function of the trier of fact to resolve the conflicts in the evidence.
*256 Capo married Gladys in North Carolina in a spur-of-the-moment civil ceremony while Capo was in military service. The "real marriage ceremony" reference is to the decedent's desire for a "real” religious ceremony. Capo has not had an opportunity to testify as to the marriage license. Those matters are proper subjects for consideration by the trier of fact in a complete evidentiary proceeding.