655 So.2d 142 (1995)
Olga LAMBERTINI, Appellant,
v.
Frank LAMBERTINI, Appellee.
Nos. 93-2702, 93-2135.
District Court of Appeal of Florida, Third District.
April 26, 1995.
Rehearing Denied June 21, 1995.
Ellen G. Lyons, Miami, for appellant.
Calzon, Gayoso & Gersten and Maria Del Carmen Calzon, Coral Gables, for appellee.
Before NESBITT, JORGENSON, and GODERICH, JJ.
PER CURIAM.
The wife appeals from the final judgment annulling the marriage between her and her putative husband. We reverse with directions.
In 1948, Olga Lambertini married her first husband in Chile. While living in Argentina in the late 1950's, and having since separated from her first husband, she met and began living with Frank Lambertini. Subsequently, the Lambertinis sought out and paid for the services of an attorney in Buenos Aires who procured Mexican documents that purported *143 to divorce the wife from her first husband and marry her to Frank Lambertini. The couple moved to Nicaragua, where their two daughters were born. During this time, the wife's first husband procured a valid annulment of their marriage. The Lambertinis immigrated to the United States in 1968, where they have since continued to live.
The wife filed her petition for dissolution in 1992. The wife also sought exclusive possession of the marital home, temporary support, a restraining order against her husband, and attorney's fees and costs. The husband answered, raising the invalidity of the Mexican marriage, denying that he should support the wife as he did not have the means to do so, and denying that any jointly held property should be equitably distributed.
After evidentiary hearings, the General Master found that the wife had demonstrated a need for support, and that the husband had the ability to pay. The Master determined that the wife should have possession of the marital home, collect all rentals from the couple's various properties and be responsible for those mortgages, and that the husband should pay the wife an additional $300 per month. Despite the husband's exceptions, the trial court adopted and ratified the entire Report.
Subsequently, the husband filed an amended counterpetition, asking for annulment of the marriage, claiming that the Mexican divorce and re-marriage obtained through the Buenos Aires attorney was void. After trial, the court found that the husband lacked standing to contest the wife's divorce from her first husband, and although the Mexican marriage was of doubtful validity, the husband was estopped to contest the couple's subsequent thirty-year relationship as married persons. The court granted the wife lump sum alimony, equitable distribution of the couple's properties, rents from those unsold rental properties, and ordered that each side was to bear its own fees.
The husband moved for a stay of the judgment and rehearing based on newly discovered evidence, claiming that the court had no subject matter jurisdiction to enter a divorce because a recently acquired copy of Mexican official's certificates of non-existence of the marriage confirmed that the marriage was void ab initio. After rehearing, the court determined in its final judgment that it had no subject matter jurisdiction, terminated the wife's previous grant of support and alimony, and granted an annulment. The wife appeals.
The presumption of a marriage's existence grows out of long and continuous cohabitation, the establishment and maintenance of a home and family, and recognition by the public generally and their friends and associates that the man and woman are husband and wife. In re Estate of Marden, 355 So.2d 121 (Fla. 3d DCA), cert. denied, 361 So.2d 833 (Fla. 1978). The strength of that presumption increases with the passage of time during which the parties are cohabiting as husband and wife. Id.; see also 25 Fla. Jur.2d Family Law § 46 (1992). The presumption of validity of the marriage in the instant case is a strong one, regardless of the dispute whether the Mexican marriage was void ab initio. The parties cohabited and held themselves out to family, friends, and to the public as married for approximately thirty years, bore and raised two children within this time, and held property as tenants by entirety. At final hearing the husband testified that he had honestly believed and reasonably relied on the validity of the marriage to the wife for some thirty years. There was no allegation by either party that the marriage was void until the wife made her claim for alimony in the dissolution proceedings. For these reasons the husband was equitably estopped from raising the validity of the marriage, and annulment was improper. See McMichael v. McMichael, 158 Fla. 413, 28 So.2d 692 (1947); Keller v. Keller, 521 So.2d 273 (Fla. 5th DCA 1988); Seoane v. Seoane, 514 So.2d 430 (Fla. 3d DCA 1987); Arnold v. Arnold, 500 So.2d 739 (Fla. 3d DCA 1987).
Each party also claims that the other was the active procurer of the invalid Mexican marriage. However, there is no evidentiary support in the record for the argument that one of the parties is innocent while the other is necessarily culpable. Apparently, by focusing on the claimed invalidity of the Mexican *144 divorce and marriage, the trial court misapprehended that both parties may have been duped by the unprofessional misrepresentations of the Buenos Aires attorney who procured the putative marriage certification. There is no record evidence of any fraudulent conduct by either of the parties. Both parties participated in procuring the so-called divorce and marriage from the Argentine attorney, and there is nothing in the evidence to indicate that either party had reason to believe that the Mexican divorce and marriage were not valid.
For the foregoing reasons the judgment of annulment is reversed and remanded with directions to accept subject matter jurisdiction over the parties and enter a divorce according to the original dissolution judgment and order, and for such other relief as the parties may present by supplemental petition.