# FIRST DISTRICT COURT OF APPEAL STATE OF FLORIDA

_____

No. 1D18-283

_____

WILLIAM E. CAMPBELL and
FLORA D. CAMPBELL,

    Appellants,

    v.

STATE OF FLORIDA, DEPARTMENT
OF TRANSPORTATION,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Robert M. Dees, Judge.

March 28, 2019

B.L. THOMAS, C.J.

Appellants appeal the trial court's final judgment quieting title of the subject property to the Florida Department of Transportation under section 95.361, Florida Statutes. We affirm.

*Facts*

On March 17, 2004, Appellants purchased a 5.72-acre parcel of property in Duval County abutting the eastern boundary of State Road 5. In June 2005, the Florida Department of Transportation (the Department) approved construction plans for

the River City Marketplace development. Based on a survey done by the Department, permits were issued for use of a publicly owned right-of-way on the edge of State Road 5 abutting Appellants' property. The new development required the developer to widen State Road 5 and place a drainage swale, gas lines and power lines on the publicly owned right-of-way on the eastern edge of State Road 5, abutting the western border of Appellant's property. Beginning in 2006 and continuing, routine maintenance was performed on the State Road 5 right-of-way, including the subject property; the maintenance involved mowing, litter pick-up, edging, mechanical sweeping, shoulder repair, tree trimming, ditch maintenance, curb, and sidewalk edging.

At his deposition, Appellant William Campbell testified that he had been generally aware of the widening of State Road 5 but was not aware of the specifics of the project. Campbell testified that, between 2005 and 2014, he visited his property three times.

In April 2015, Appellants began to develop the property and build a self-storage facility on it. In connection with this development, a surveyor marked the four corners of Appellants' property. As a result, Appellants and the Department discovered that the right-of-way used in connection with the River City Marketplace development was insufficient to support the work that had been permitted; the permits issued in 2005 were based on an incorrect DOT survey which indicated that the public right-of-way extended 100 feet from State Road 5, when the right-of-way actually extended only 80 feet. Thus, the subject property – a 20-foot-deep strip of land running along the western boundary of Appellants' property, a 7281-square-foot-portion – was encroached by the road widening.

On May 22, 2015, Appellants met with Department staff at the office in Jacksonville. At the meeting, a Department maintenance engineer conceded that the Department had made a mistake and wanted to resolve it. The engineer informed Appellants that he had conferred with the Department's legal department and could offer Appellants one of two options: the Department could purchase the affected property from Appellants, or the Department could move the drainage swale and utilities

2

from Appellants' property and back onto the publicly owned right-of-way. The Department's assistant right-of-way manager told Appellants it was unclear whether a taking had actually occurred, that the Department had not ordered an appraisal on Appellants' property, and that the Department had not yet made a decision on how to proceed.

Internally, the Department determined that it would cost $197,000 to relocate the overhead structures on the encroached-upon property, and $269,000 to relocate underground infrastructure. The Department did not make an offer to Appellants, and on July 30, 2015, the Department filed a maintenance map claiming title to the subject property.

Appellants sued the Department for inverse condemnation, arguing that their property had been taken for public use without compensation. The Department filed a counterclaim to quiet title, arguing that section 95.361, Florida Statutes, had vested all right, title, and interest in the subject property to the Department.

At a bench trial, the maintenance contracts manager for the Department testified that, from 2006 until the time of trial, the Department hired contractors to maintain property along State Road 5, including Appellants' encroached-upon property. The manager testified that, under that contract, the Department issued specific work orders to be performed by the contractor and testified that routine maintenance on the State Road 5 right-of-way, including the subject property, involved mowing, litter pickup, edging, mechanical sweeping, shoulder repair, tree trimming, ditch maintenance, curb, and sidewalk edging.

A contracted project manager testified that the contractor maintained all state roads, including the subject property. The manager testified that the contractor's crews patrol the subject property twice a week and perform maintenance up to the tree line, including fixing potholes, striping, mowing, litter pick-up, tree trimming, weed eating, and cleaning ditches. The manager described the methods that the contractor used to document work performed under the contract and testified that he had never personally seen work performed on the subject property. A Department assistant maintenance engineer testified that the

3

Department issued final acceptance of permitted work for the River City Marketplace development on May 22, 2007, indicating that all permitted work was complete and acceptable to the Department.

Appellant Flora Campbell recorded the May 22, 2015, conversation between Appellants and Department officials on her phone. Appellants offered a transcript of the recording as evidence at trial, arguing that it was probative of the fact that the Department made a representation and later changed its position. The trial court excluded the transcript, ruling that the Department employees had a reasonable expectation that their communications were private, and that the recording and transcript were inadmissible under section 934.06, Florida Statutes.

The trial court found that the Department had been maintaining the subject property since May 22, 2007 at the latest, and that pursuant to section 95.361(1), Florida Statutes, the property vested in the Department four years later, on May 22, 2011, before Appellants filed suit on August 18, 2015. The trial court found that the Department's taking of Appellant's property occurred in 2005, when the physical encroachment began. The trial court further found that Appellants had not shown a claim of equitable estoppel, because they had not established that their position had detrimentally changed based on their reliance on the Department's initial representation. Based on those findings, the trial court denied Appellant's claim of inverse condemnation and granted the Department's counterclaim to quiet title, confirming to the Department fee simple title to the property, as described and recorded in the Department maintenance map.

*Analysis*

*I.*
*Whether Competent, Substantial Evidence Supports the Trial Court's Final Judgment*

An appellate court reviews a trial court's application of section 95.361, Florida Statutes, *de novo*, and any factual findings supported under the competent, substantial evidence standard of

4

review must be upheld. *Chackal v. Staples*, 991 So. 2d 949, 953 (Fla. 4th DCA 2008).

Section 95.361(1), Florida Statutes, provides that when a road is constructed by a governmental entity, and the width of that road is maintained by that entity "continuously and uninterruptedly for 4 years," the entire maintained width of the road is "dedicated" to the public, vesting to the public the right, title, easement, and appurtenances.

Section 95.361(2), Florida Statutes, provides that when a road is constructed by a nongovernmental entity, and the width of that road is regularly maintained by a governmental entity for seven years, the entire maintained width of the road is "dedicated" to the public, vesting to the public the right, title, easement, and appurtenances. "The test is not whether the maintenance is proper, or frequent, or thorough, or open and obvious. The test is whether the maintenance was appropriate to the circumstances and, if so, the statutory test is met." *Division of Admin., State Dep't of Transp. v. Ideal Holding Co.*, 427 So. 2d 392, 393 (Fla. 4th DCA 1983).

Appellants argue that there was no competent, substantial evidence to support the trial court's finding that the Department constructed State Road 5 or maintained the subject, encroached-upon property for either four or seven years. The Department argues that competent, substantial evidence established that the Department has maintained the widened portion of State Road 5, and therefore established dedication, whether the initial widening was deemed to be constructed by the Department or a contractor.

Competent, substantial evidence is "'such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred' or such evidence as is 'sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached.'" *Heifetz v. Dep't of Bus. Regulation, Div. of Alcohol & Tobacco*, 475 So. 2d 1277, 1281 (Fla. 1st DCA 1985) (quoting *De Groot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1957)).

The testimony at trial was such that the court could have "reasonably inferred" that the Department, through its current contractor, has maintained the subject property since at least May 22, 2007, when a Department engineer accepted the permitted work as complete on the area which included the subject property. Therefore, competent, substantial evidence supported the trial court's finding that the Department had continuously and uninterruptedly maintained the subject property from at least

May 22, 2007 until the time of the suit in August 2015, and that, under section 95.361(1), Florida Statutes, title vested in the Department in 2011, after four years of maintenance, and would have vested after seven years of maintenance if the court had determined the widening of State Road 5 had been constructed by a nongovernmental entity.* Therefore, the trial court did not err in quieting title of the subject property to the Department.

## II.
### Whether Appellants' Inverse Condemnation Claim Was Time Barred

"The general rule of law is that a property owner must bring an inverse condemnation claim within four years of the physical invasion of the property caused by governmental action." *Judkins v. Walton Cty.*, 128 So. 3d 62, 64 (Fla. 1st DCA 2013). Evidence at trial established that the physical invasion of Appellants' property began in November 2005, when the trees on the western edge of the property were cut and the area cleared.

Appellants argue that "[i]t was upon discovery of the encroachment by FDOT that [Appellants] were denied the economic use of their property and that the statute of limitations began to run." They argue that, because the taking was not readily identifiable, it did not occur until Appellants actually discovered it on April 7, 2015, citing *Sarasota Welfare Home, Inc. v. City of*

---

* The trial court found that the widening of State Road 5, although actually constructed by a contractor, was done by the Department for the purposes of section 95.361(1), Florida Statutes; therefore, only four years of continuous maintenance was required before titled vested in the Department.

6

*Sarasota*, 666 So. 2d 171, 173 (Fla. 2d DCA 1995).   Appellants argue that *Sarasota Welfare Home* supports their argument, because the Second District held that the taking occurred when the physical invasion was discovered.   Appellants misread *Sarasota Welfare Home*.   In that case, the City of Sarasota in 1970 buried a sewer pipe that extended onto property owned by Sarasota Welfare Home; the physical invasion was not discovered until 1988.   *Id*. at 172.   The Second District held that the determination of whether a taking occurs is fact intensive and found that the discovery of the invasion caused the property owners to be denied the benefit of their property, therefore, that was when the taking occurred for the purposes of the inverse condemnation statute of limitations. *Id*. at 173.

Here, however, Appellants were "denied substantially all economically beneficial or productive use" of a portion of their land, when the Department encroached upon it by widening State Road 5 beginning in November 2005.   Appellants' window to file an inverse condemnation action ended in November 2009, four years after Appellants were deprived the beneficial use of their property. Appellants filed suit on August 17, 2015; therefore, the trial court did not err in denying Appellants' inverse condemnation claim as time barred.

### III.
### *Whether the Department Was Equitably Estopped*
### *From Obtaining Title to the Subject Property*

A trial court's decision to apply the doctrine of equitable estoppel is reviewed for an abuse of discretion, provided there is competent, substantial evidence to support each element of the doctrine.  *Dep't of Revenue ex rel Thorman v. Holley*, 86 So. 3d 1199, 1203-04 (Fla. 1st DCA 2012).

"As a general rule, equitable estoppel will be applied against the state only in rare instances and under exceptional circumstances."  *State, Dep't of Revenue v. Anderson*, 403 So. 2d 397, 400 (Fla. 1981).

To establish a claim of equitable estoppel: (1) the party against whom estoppel is sought must have made a representation about

7

a material fact that is contrary to a position it later asserts; (2) the party seeking estoppel must have relied on that representation; and (3) that party must have changed his or her position to their detriment, based on the representation. *Lewis v. Dep't of Health & Rehab Servs.*, 659 So. 2d 1255, 1256-57 (Fla. 4th DCA 1995).

The trial court found that the Department's initial statements regarding either the removal of infrastructure or purchase of the subject property, and its subsequent decision to pursue neither of those options, constituted a change of position to establish the first element of equitable estoppel. However, the trial court found that Appellants did not change their position in reliance on the Department's statements, as in either scenario, Appellants could have filed suit; thus, Appellants could not prove detrimental reliance. We agree.

The Department did not lull Appellants "into a disadvantageous legal position," *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001); the subject property vested to the Department before the maintenance engineer made any misstatement. The trial court therefore did not abuse it discretion in finding that the State was not estopped from an ownership claim in the subject property.

*IV.*
*Whether Exclusion of the Secret Recording and*
*Transcript of the May 22, 2015 Meeting Was Harmless Error*

"[I]n a civil appeal, the test for harmless error requires the beneficiary of the error to prove that the error complained of did not contribute to the verdict." *Special v. West Boca Med. Ctr.*, 160 So. 3d 1251, 1265 (Fla. 2014).

Appellants argue that the "meeting transcript clearly shows that FDOT strongly presented options to [Appellants] during the meeting . . . ." The transcript was probative to the first prong of equitable estoppel, i.e., that the State made a representation and subsequently changed its position. The testimony at trial was consistent with the transcript, as the Department's maintenance engineer testified that he presented Appellants with two options

before later proceeding under the "dedication" in section 95.361, Florida Statutes. Additionally, the trial court found that "the Department's statement of its initial position only satisfies the first element of equitable estoppel," thus, finding in favor of Appellants on the element that the transcript was offered to prove. Therefore, any error in excluding the transcript was harmless, as it did not affect the judgment.

## *Conclusion*

Based on the foregoing, the trial court did not err in denying Appellant's inverse condemnation claim and quieting title in the subject property to the Department. We therefore affirm the court's final judgment.

AFFIRMED.

WETHERELL and WINSOR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andrew Prince Brigham and E. Scott Copeland of Brigham Property Rights Law Firm PLLC, Jacksonville, for Appellants.

Wayne W. Lambert, General Counsel, Marc A. Peoples, Assistant General Counsel, Department of Transportation, Tallahassee, for Appellee.