# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-1776
_____

JEANETTE VALLE BAXTER,

 Appellant,

 v.

KERN C. A. BAXTER,

 Appellee.

_____

On appeal from the Circuit Court for Hamilton County.
Wesley R. Douglas, Judge.

December 4, 2024

PER CURIAM.

Jeanette Valle Baxter appeals the trial court's order in her action for dissolution of marriage that declared her marriage to Kern C. A. Baxter was bigamous and thus void. Jeanette argues that Kern was equitably estopped from challenging the validity of their marriage and that the trial court's failure to apply the doctrine of equitable estoppel requires reversal. We agree and reverse and remand for further proceedings.

Jeanette filed her petition for dissolution of marriage in the circuit court in Hamilton County in September 2020. She alleged that she and Kern were married on April 26, 1995, in Guayaquil, Ecuador. In his answer to the petition, Kern denied that the parties were legally married and raised the affirmative defense

that the purported marriage was bigamous and therefore void, so there was no marriage to dissolve. In his affirmative defense, Kern alleged that as of the date of the alleged marriage, Jeanette was still married to Steven Nielsen. Kern further asserted that Jeanette's marriage to Nielsen was not dissolved until August 1996 in Lee County, Florida.

Responding to Kern's affirmative defenses, Jeanette argued that Kern was equitably estopped from challenging the validity of their marriage. She relied on the facts that the parties had lived together as a family for over twenty-five years after the Ecuadorian marriage, raised two children to adulthood, filed federal taxes under the "married filing jointly" designation, and purchased real property as "husband and wife."

Jeanette moved to bifurcate the action for a separate determination of whether the marriage was valid and therefore subject to dissolution. The trial court granted bifurcation and held an evidentiary hearing only on the issue of the validity of Jeanette and Kern's 1995 purported marriage.

There was no transcript of the hearing, and the parties did not file a stipulated statement of the evidence. *See* Fla. R. App. P. 9.200(b). As a result, the sufficiency of any testamentary evidence to support the trial court's findings on underlying factual issues is not before us for review. The record on appeal is limited to the order itself, the pleadings, and documents admitted into evidence. We review only for errors of law apparent on the face of the order in light of the documentary record. *See Quinones v. Quinones*, 182 So. 3d 702, 703 (Fla. 5th DCA 2015) (holding that when appellant files no transcript, review is limited to errors apparent on face of judgment and does not include underlying factual issues); *see also Ham v. Nationstar Mortg., LLC*, 164 So. 3d 714, 716–17 (Fla. 1st DCA 2015) (same).

Jeanette filed a pre-hearing memorandum of law in support of her position that her marriage to Kern was valid and, as a result, subject to the dissolution proceedings. She alleged that her marriage to Nielsen was terminated in Ecuador on April 25, 1995, the day before she married Kern. And because Kern was not a party to that divorce, Jeanette claimed that Kern lacked standing to challenge its validity. Jeanette further alleged that Kern knew

about her marriage to Nielsen and the dissolution of that marriage in Ecuador.

Based on the evidence at the hearing, the trial court found that Jeanette failed to prove any Ecuadorian divorce from Nielsen in 1995. However, the trial court also found that after the parties traveled to Ecuador, "[b]oth parties believed that the Wife was divorced from Mr. Nielsen and that the parties were legally married when they travelled back to the U.S. from Ecuador in April 1995." Indeed, the parties were married in a government office, then had a formal wedding ceremony at a church. Pictures in the record show Jeanette in a long-flowing wedding dress and Kern in a tuxedo.

In the order on appeal, the trial court recognized the strong presumption under Florida law that a marriage is valid, *see Grace v. Grace*, 162 So. 2d 314, 317 (Fla. 1st DCA 1964), and that a party may be equitably estopped from attacking the validity of a marriage as a defense against a dissolution action. *See Lambertini v. Lambertini*, 655 So. 2d 142, 143 (Fla. 3d DCA 1995). But the court noted that Florida law does not recognize common law marriage. *See* § 741.211, Fla. Stat.

The court declared the parties "not legally married" and that their purported marriage in Ecuador in 1995 was bigamous, therefore void, and "of no legal effect as if it never existed under the laws of Florida." This appeal followed.[1]

A bigamous marriage is void under Florida law. *Smith v. Smith*, 224 So. 3d 740, 747 n. 5 (Fla. 2017) (citing *Jones v. Jones*, 161 So. 836, 839 (Fla. 1935)); *Lopes v. Lopes*, 852 So. 2d 402, 403

---

[1] We have jurisdiction to review the order on appeal as a partial final order because it disposed of "a separate and distinct part of the litigation" and so is appealable under rule 9.110(k), Florida Rules of Appellate Procedure. *See El Gohary v. El Gohary*, 76 So. 3d 355, 357 (Fla. 2d DCA 2011) (listing two types of partial final judgments); *Shepardson v. Shepardson*, 820 So. 2d 360, 361 (Fla. 1st DCA 2002) (denying dismissal of appeal of judgment of dissolution of marriage that reserved jurisdiction to determine all other issues).

(Fla. 5th DCA 2002) (citing *Jones*). "[I]t is possible for a voidable marriage to ripen into a valid marriage if it is ratified by the parties" but "a void marriage is generally one that is incapable of ratification or prohibited by statute." *Smith*, 224 So. 3d at 746. A void marriage "is as though no marriage had ever taken place." *Id.* (citations omitted).

Even so, "[a] party to a dissolution proceeding may be estopped from asserting that the marriage is bigamous and void." *Wright v. Wright*, 778 So. 2d 352, 354 (Fla. 2d DCA 2001) (citing *Lambert v. Lambert*, 524 So. 2d 686 (Fla. 4th DCA 1988), and *Keller v. Keller*, 521 So. 2d 273 (Fla. 5th DCA 1988)). "The theory behind the equitable estoppel doctrine is not to make legally valid a void divorce or to make an invalid marriage valid, but rather, to prevent one from disrupting family relations by allowing one to avoid obligations as a spouse." *Mayer v. Mayer*, 311 S.E.2d 659, 668 (N.C. Ct. App. 1984). "Whether an estoppel defense applies depends upon the facts of the case." *Wright*, 778 So. 2d at 354. On appeal, Jeanette argues that reversal of the trial court's order is required because the court misapplied the law by failing to find Kern equitably estopped from challenging the validity of the marriage. We agree.

"A trial court's application of the doctrines of either laches or equitable estoppel is reviewed for abuse of discretion, provided that there is competent, substantial evidence for each element of the doctrine applied." *Dep't of Revenue ex rel. Thorman v. Holley*, 86 So. 3d 1199, 1202–03 (Fla. 1st DCA 2012); *see also Campbell v. Dep't of Transp.*, 267 So. 3d 541, 547 (Fla. 1st DCA 2019) (quoting *Holley*, 86 So. 3d at 1203–04).[2]

Jeanette bases her position on the undisputed facts — as found by the trial court — that the parties lived and acted as if they were legally married for over 25 years and raised two children to adulthood. They owned real property as tenants by the entirety.

---

[2] Because of the lack of a transcript of the proceedings we can only look to the order and the matters in the record to assess whether competent substantial evidence supported the trial court's application of equitable estoppel.

4

They filed federal taxes as "married filing jointly," thereby annually affirming their belief about their marital status under penalty of perjury.[3] All in all, the parties held themselves out as husband and wife for the two and a half decades dating from the Ecuadorian divorce and marriage in 1995, until Jeanette filed a petition for dissolution of the marriage in 2020.

Jeanette does not dispute the trial court's recognition that common-law marriage was abolished by Florida law as of 1968. *See* § 741.211, Fla. Stat. But she argues that Kern's decades of behavior, in cooperation with her own, estops him from challenging their marriage as bigamous and void.

Equitable estoppel generally prevents spouses from challenging their marriage's validity by attacking a prior divorce decree. *See Grace,* 162 So. 2d at 317; *Keller*, 521 So. 2d at 274 (quoting RESTATEMENT (SECOND) OF CONFLICT OF L. § 74 cmt. b (AM. L. INST. 1971)) ("The rule may be applied whenever, under all the circumstances, it would be inequitable to permit a particular person to challenge the validity of a divorce decree. Such inequity may exist when action has been taken in reliance on the divorce . . . or when the attack on the divorce is inconsistent with the earlier conduct of the attacking party"). In *Grace*, for instance, the plaintiff wife had been previously married and obtained a divorce from her first husband in another state before marrying the second husband. 162 So. 2d at 317. When the wife sued for divorce from the second husband four years later, he argued that their marriage was invalid because the wife hadn't been a resident of the other state when she divorced the first husband. *Id.* But our court resisted the invitation to analyze the marriage's legality by delving into the validity of the foreign-state divorce decree. *Id.* Instead, we verified the second marriage in *Grace* based on the

---

[3] Under 26 U.S.C. § 7206(1), a taxpayer who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that . . . is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter" is committing a crime.

elementary principle of domestic relations law that a marriage, once shown to have been ceremonially entered into . . . is presumed to be legal and valid. All the presumptions necessary to make a marriage valid, including capacity to contract, attach on proof of a ceremonial marriage and cohabitation by the parties under the belief that they were lawfully married. Furthermore, as to the validity of a subsequent as against a previous marriage of the same person, the second or subsequent marriage is presumed to be valid. Such presumption is stronger than and overcomes, or rebuts, the presumption of the continuance of the previous marriage, and the burden of proving the continuance of the previous marriage and the invalidity of the subsequent marriage is on the party attacking the validity of the latter.

*Id.*

*Grace* tracked the Florida Supreme Court's view that a presumption exists "in favor of the validity of the last marri[a]ge," which it called "one of the strongest presumptions known to the law." *Teel v. Nolen Brown Motors, Inc.*, 93 So. 2d 874, 876 (Fla. 1957). Other cases explain that the presumed validity of a marriage's existence "grows out of long and continuous cohabitation, the establishment and maintenance of a home and family, and recognition by the public generally and their friends and associates that the man and woman are husband and wife." *Lambertini*, 655 So. 2d at 143.

The presumption grows stronger with the length of time of the couple's cohabitation. *Id.* A subsequent challenge to the validity of the marriage by a spouse warrants estoppel because of the inequity associated with allowing and incentivizing spouses to reap the benefits of the marriage for many years while suppressing concerns about the marriage's validity. *See Grace*, 162 So. 2d at 317–18 (finding a husband's challenge inequitable after having accepted the benefits of marriage for four years); *see also Albassam v. Klob*, 238 So. 3d 311, 312 (Fla. 4th DCA 2018) ("[a] person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do

6

so"); *see also Lambert*, 524 So. 2d at 688 ("[A]ppellant thought that the Dominican Republic divorce decree was valid, and appellee made no claim that his marriage to appellant was void until answering appellant's petition for dissolution . . . [I]t would be inequitable to now permit appellee to contend that the Dominican Republic divorce decree is invalid").

Turning to the Baxters' case here, Kern sat on his qualms about the Ecuadorian marriage for more than 25 years. He only retrieved the marriage-validity argument from his back pocket when a dissolution case was filed. Under these circumstances, Florida law does not permit Kern to question his marriage. Rather, the elements of Jeanette's equitable estoppel argument were established by the trial court's findings.[4] Specifically, the trial court's order stated:

> 5. In April 1995, the parties travelled to Ecuador with the intent of the Wife getting a quick divorce from Mr. Nielsen and the parties then getting married immediately afterward.

> 6. The parties were married on April 25, 1995, in Ecuador at a government building and they had a religious ceremony the following day at a church in Ecuador.

> 7. Both parties believed that the Wife was divorced from Mr. Nielsen and that the parties were legally married when they travelled back to the U.S. from Ecuador in April 1995.

Upon returning to the United States, Jeanette relied on Kern's marriage vow for more than 25 years by cohabiting with

---

[4] The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004).

him as a married couple, raising a family together, holding herself out as being married, filing tax forms jointly as a married couple under penalty of perjury, and more. All the while, Kern knew Jeanette's marriage status as much as she did and had helped execute the entire Ecuadorian plan. This is different from cases like *Wright*, 778 So. 2d at 353, for instance, where the marriage status of a spouse was discovered only after the later marriage. Indeed, Kern travelled and was in on the whole Ecuadorian divorce and marriage plan from the start. And only when the dissolution case was filed did Kern claim not to be married, for his own benefit and to Jeanette's detriment.

Under these circumstances, Kern is estopped from challenging the validity of the Ecuadorian divorce and marriage. Kern provided no evidence proving that the Ecuadorian divorce was invalid. And so, the strongest of presumptions exists in favor of the validity of the parties' marriage as the "last marriage." *Teel*, 93 So. 2d at 876.

Not only do the findings establish Jeanette's equitable estoppel argument, but Kern's selective timing in disclaiming the marriage strengthens the equitable case for its validity. *See Lambertini*, 655 So. 2d at 143 ("There was no allegation by either party that the marriage was void until the wife made her claim for alimony in the dissolution proceedings. For these reasons the husband was equitably estopped from raising the validity of the marriage . . ."); *see also McMichael v. McMichael*, 28 So. 2d 692, 692 (Fla. 1947) (holding that where husband and wife continued to live together after question arose that marriage was not legal because husband had not obtained a divorce from his first wife, husband was precluded from questioning the current marital status); *Grace*, 162 So. 2d at 318 ("Appellant's conduct in accepting the benefits of the marriage which he now attempts to invalidate . . . is a circumstance which cannot be entirely ignored, for he certainly does not raise the question with 'clean hands.'"). The doctrine of equitable estoppel is designed to prevent exactly the type of inequity involved here, where Kern accepted all the benefits of his 25-year marriage and only disputed his status to make an expedient legal argument. A decision affirming his maneuver would "amount to 'flagrant invitation to others to attempt to circumvent the law[,] . . . and when tired of such

8

situation, apply to the courts for a release from the indicia of the marriage status.'" *Id.*

Moreover, we disagree with the trial court's view that affirming the validity of the parties' marriage "would be akin to affirming and creating a common law [sic] marriage." First, the parties were formally married in both civil and ecclesiastical ceremonies in Ecuador, which is directly contrary to how a common law marriage occurs. *See, e.g.*, *Le Blanc v. Yawn*, 126 So. 789, 790 (Fla. 1930) (contrasting ceremonial marriages from common law marriages established by habit or repute). Second, even though Florida does not recognize common law marriage, a spouse in Kern's shoes, who was fully aware of the domestic situation surrounding his marriage, cannot accept the parties' circumstances for decades and then, advantageously to himself and detrimentally to his wife, pivot to using those same domestic facts to attack the validity of his marriage. *Grace*, 162 So. 2d at 317–18.

Summing up, Kern is estopped to challenge the validity of his marriage to Jeanette because the trial court's findings validated the parties' 25-year marriage against a spousal attack on the foreign divorce decree and also demonstrated that Kern did not raise the issue with clean hands. The trial court court's judgment is reversed, and the cause is remanded for further proceedings.

REVERSED and REMANDED.

OSTERHAUS, C.J., and BILBREY and NORDBY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

George T. Reeves of Davis, Schnitker, Reeves & Browning, P.A., Madison, for Appellant.

Donald E. Pinaud, Jr., of All Florida Justice, LLC a/k/a Law Office of Don Pinaud, Jacksonville, for Appellee.