ALTENBERND, Judge.
This is an appeal from the final judgment in a bifurcated divorce proceeding. In a partial final judgment entered prior to the final judgment that is challenged in this appeal, the trial court dissolved the marriage of Diane and Mark Mathes. We reverse the final judgment.
Diane and Mark Mathes not only were husband and wife, but they were also the owners, officers, and employees of a Florida corporation, Manatee Media, Inc.[1] The Wife owned 51% of the stock in this corporation, and the Husband owned 49% of the stock. As the marriage became irretrievably broken, so did the business.
Unfortunately, the attorneys failed to understand the basic difference between the family’s marital assets and those of the separate Florida corporation. The trial court proceeding was infected from inception by an improper petition for dissolution of marriage filed by Sparkman and Spark-man, P.A., on behalf of the Wife.
Section IV of the Wife’s petition alleged relief for “joint business.” It explained that the business was a corporation owned by the couple. The Wife’s attorneys suggested that the Wife’s shares of stock in the business should be sold as part of the equitable distribution. Clearly, the trial court had authority to value and distribute the stock of this corporation as a marital asset.
But the Wife’s attorneys sought far more than a valuation of this asset. They asked the trial court to establish the Wife as the corporate officer in charge of the daily operations of the “joint business,” to set corporate salaries for the Husband and Wife during the pendency of the divorce, and otherwise to involve itself in the management of this separate Florida corporation. This facial error in the petition was compounded by the answer and counter-petition filed on behalf of the Husband by W. Todd Smith, who failed to point out that the court had no jurisdiction over the corporation.
As a result, by the time the trial court entered • the final judgment, this divorce had transformed into something similar to a receivership pursuant to section 607.1432, Florida Statutes (2008). In the final judgment, the trial court explains that it had previously removed the Husband as editor of the corporation’s main publication and had placed the Wife in charge of the “company.” The court set corporate salaries, ordered disbursements from the corporation, ordered the corporation sold, and appointed an attorney to represent the corporation — all without jurisdiction over the corporation and without notice to creditors who might be affected.
*209 At first, the scope of this error was not obvious to this court because the two law firms filed briefs in this court including the corporation in the style of the proceeding, thereby implying that the corporation was a party to the lower court proceeding.[2] When this court received no briefing from an attorney representing the corporation, we investigated the file and observed that the briefs had not been served on any attorney for the corporation. Further examination of the record suggested that, although the corporation was often listed as a respondent in the style of the case in the trial court filings and in the partial final judgment dissolving the marriage, the corporation was not and never had been a party to the proceeding. Thus, we issued an order directing the parties to explain whether the trial court had jurisdiction over the corporation and, if not, how the court would have had any power to order the corporation to take the steps that were ordered. We further inquired as to whether the parties would be willing to mediate what appeared to be a very difficult situation.
The parties’ attorneys responded admitting that the corporation was not a party to the proceeding. The Husband’s attorney directed our attention to Loidl v. I & E Group, Inc., 927 So.2d 1016 (Fla. 2d DCA 2006), and admitted that he doubted the trial court had the authority to order the corporation to take many of the steps ordered in the final judgment. Because the parties appeared to be willing to mediate this matter and we did not wish to humiliate the attorneys with an opinion reflecting the magnitude of the errors in this proceeding, we entered an order compelling the parties to mediate the matter before Judge John Lenderman, a recently retired circuit court judge whose experience and expertise in complex dissolution proceedings we anticipated would assist the parties in restructuring an agreement that might avoid a reversal of this final judgment.
Near the expiration of the period designated for this mediation, this court received a notice of impasse from mediator Joseph C. Hood. Mr. Hood is a reputable attorney, and we have no reason to believe that he knew we had ordered mediation before Judge Lenderman. The attorneys who represent the parties in this case did not file any motion to modify this court’s order to mediate before Judge Lender-man, and their actions would appear to be a willful violation of that order.
The record in this appeal contains two supplements and is more than 3000 pages in length.[3] The briefing does not cite extensively to this record and often relies upon the partial final judgment and final judgment as proof of certain facts. We have struggled to understand this case from the record.
*210 The final judgment does not value or equitably distribute the stock of Manatee Media, Inc. Instead, it orders a sale of Manatee Media, Inc., and “all businesses” owned by the Husband and Wife.[4] The final judgment contains a finding that this business is worth $908,000, based on a valuation by someone named Larry Grimes. Our record has an affidavit and a letter from him in which he values “Community News Publications” at $908,000. Mr. Grimes’ valuation reflects that the business lost $173,000 in 2008 and earned only $23,253 in 2009. The Wife’s proposed equitable distribution worksheet, filed in July 2010, values the corporation at $908.00, which appears to be a typographical error. Assuming that she valued the business at $908,000, she also listed “Manatee Media Debt” at $831,232, indicating a net value of approximately $75,000.
There are other indications in the record that the corporation had significant debts. The Wife maintains that the corporation faced imminent bankruptcy at the time the petition was filed. The Husband argues that the corporation had a “negative net equity” of $439,975.[5] Uncertified accounting reports suggest that the business was operating with monthly losses when the dissolution proceeding was filed. We cannot divine the truth from this record, but it appears possible that the stock of this corporation at the commencement of the proceeding had little or no value.
Given the uncertain condition of the corporation and its disputed but extensive debts, one would think the attorneys representing the parties would have cautiously handled any liquid assets attributable to the corporation. Nevertheless, the final judgment recites that the Wife paid Spark-man and Sparkman $79,000 in attorney’s fees from corporate funds. It further recites that the Wife used in excess of $175,000 in corporate funds to pay professional fees “predominately in the support of her position in the litigation.”
Not to be outdone, the Husband’s attorney, according to the final judgment, arranged for his fees to be paid by “barter.” He wanted free advertising for his law firm in publications by Manatee Media, Inc. When the Wife refused to abide by this bartered arrangement, the trial court decided that the Husband’s attorney’s fees should be funded by the proceeds from the sale of the corporation.
We have no individual tax returns for the parties in this record. It appears that this corporation had elected S corporation status for purposes of federal taxation.[6] But the parties and their attorneys seem to have acted as if its subchapter S status allowed them to treat this separate Florida corporation like a family piggy bank whose content could be raided in the night for any personal expense. To the extent that the final judgment appears to approve expenditures by or distributions to these par *211 ties from corporate assets that might affect the rights of the corporation’s debtors, including the Internal Revenue Service (“IRS”), we emphasize that the judgment is not and never has been binding on the corporation.
The final judgment adopts by reference an order that appointed attorney G. Michael McKenzie to represent the corporation primarily as the attorney to negotiate the sale of Manatee Media, Inc. Mr. McKenzie was ordered to take various actions. Most significantly, he was ordered to make a long list of payments from the sale of the corporation. We are not certain if the trial court believed that these payments should be made in the order of the list, but that list repays loans to the Husband and other members of the Mathes and Kortus families before it orders payments to the IRS and creditors that appear to have secured interests.
Simply put, without jurisdiction over the corporation the trial court had no authority to appoint any attorney for this corporation to take any action. It is at least conceivable that the trial court might have had the power to order the Husband and Wife, as the owners of the stock, to vote in a meeting of the corporation to take these steps, but that is not what was ordered in this case. The order appointing Mr. McKenzie would appear to be a nullity, an order void from its inception.
This proceeding needs to be retried as a divorce proceeding. What steps may be required to repair the damage caused by this improper and unauthorized corporate receivership are unknown to this court and are probably matters that will need to be resolved in other legal proceedings.
We reverse the judgment on appeal in its entirety.[7] The motions for attorneys’ fees filed by both parties are denied.
Reversed and remanded.
WHATLEY and CRENSHAW, JJ., Concur.

. The final judgment described Manatee Media, Inc., as the "party's [sic] largest marital asset” and stated that it "produces a cluster of free weekly newspapers.” Other business names are mentioned in this record, including Community News Publications. It appears likely that the other businesses are operating units of some sort within Manatee Media, Inc., but the parties in this appeal have not explained to this court the legal relationship between Manatee Media, Inc., and the other businesses.

. In fairness to Judge Babb, we observe that a different judge initially handled this case and Judge Babb came into the case after it had been pending for a significant period of time. Numerous pleadings and documents in the trial court identify Manatee Media, Inc., as a respondent in the style of the case. Those pleadings are simply wrong. They were filed without certificates of service on any attorney for a corporation. The erroneous case styles suggest that the parties never disclosed to Judge Babb that they were asking for relief that exceeded the court’s jurisdiction in the dissolution of marriage case.

. The record provided to this court contains four volumes consisting of more than 800 pages that are described by the clerk of the trial court as “MISCELLANEOUS DOCUMENTS (EXHIBITS NOT ENTERED INTO EVIDENCE).” There is no issue concerning the admissibility of any evidence, and we are uncertain why the parties paid to include these documents in our record.

. The final judgment does not identify these "other businesses,” and it is difficult from this record to ascertain what legal entities the trial court might have ordered sold other than Manatee Media, Inc.

. By this, we assume that one or both owners had obtained distributions from this corporation well in excess of its equity. It is not clear from this record whether the owners were maintaining a proper level of risk in the corporation.

.Our record includes Schedule K-ls prepared on "Form 1120S” that were provided to each of the parties designating each shareholder’s share of then-current-year income, deductions, credits, and other items. Sub-chapter S corporations report corporate income, losses, deductions, and credits to the Internal Revenue Service using Form 1120-S. See 26 C.F.R. § 1.6012-2(h) (2007). See also 26 U.S.C. § 6037 (2007).

. To avoid any confusion, we emphasize that the reversal of this final judgment does not affect the partial final judgment dissolving the parties' marriage.