SWANSON, J.
In this dissolution of marriage proceeding, we have for review the trial court’s interlocutory Order on Wife’s Emergency Motion, directing the liquidation of certain of the husband’s assets and the disbursement of the resulting funds to assist in paying an estimated $28,000 mortgage debt, and the escrowing of other funds. The husband raises two issues challenging *671 the trial court’s rulings. We have jurisdiction.*

History

Ronald Ray Austin (“the husband”) and Cynthia B. Austin (“the wife”) were shareholders in the Jacksonville law firm of Austin & Austin, P.A. On April 10, 2012, the husband filed a petition for dissolution of marriage. The wife ultimately left the firm and, by the time of the hearing leading up to the order on review, had secured employment with Broad and Cassel, earning an annual salary somewhere between $135,000 to $150,000. In the meantime, the parties’ marital home was facing imminent foreclosure. A potential source of money to save the home was believed to be found in the form of attorney’s fees owed by the Jacksonville Transportation Authority (“JTA”). Consequently, on January 14, 2013, the trial court held a hearing on the wife’s Renewed and Second Supplement to Wife’s Motion for Temporary Needs, as well as on JTA’s Motion to Intervene and for Interpleader Relief. On February 4, 2013, the trial court entered a Second Amended Order on Non-Party, [JTA’s] Motion to Intervene and for Interpleader Relief, granting the motion and ordering that “the sum owed by JTA to Austin & Austin, P.A., for legal services rendered (the “Interpleaded Fund”)” would be “distributed and/or retained” in the following manner:
a. The portion of the Interpleaded Fund that is owed to the law firm of Broad and Cassel (the “Undisputed Amount”) shall be remitted by JTA to Broad and Cassel; and
b. The remaining portion of the Inter-pleaded Fund (the “Disputed Amount”) shall be retained by JTA until this Court makes a determination as to distribution of the Disputed Amount.
More specifically, the trial court instructed that its order would “not apply to invoices submitted for legal services performed subsequent to April 12, 2012[,] and Ronald R. Austin, Austin & Austin, and/or Ronald R. Austin’s successor law firm, shall be entitled to receive payment on such invoices without further order of this Court.”
On February 19, 2013, the trial court issued an order on the wife’s Renewed and Second Supplement to Wife’s Motion for Temporary Needs. In the order, the trial court found the wife needed, and the husband had the ability to pay, $5000 per month as alimony and child support. The court also found that the law firm of Austin & Austin and/or Ronald Austin was entitled to certain funds from JTA “which accrued either before or after the wife was determined to have left the practice on or about April 30, 2012.” In addition, the court found the marital home was approximately five months in arrears on mortgage payments and ordered that “[a]ll funds obtained from the JTA on outstanding invoices, whether generated prior or subsequent to April 30, 2012, shall, upon payment, be utilized to catch up the mortgage” on the marital home.

THE WIFE’S MOTION

The apparent inconsistencies in the preceding two orders concerning the distribution of attorney’s fees from JTA prompted the wife to file, on February 20, 2013, her Motion for Emergency Relief and for Clarification and/or Enforcement. In her motion, the wife represented her belief that *672 the husband had been ordered “to pay all of the money due from [JTA] to catch up the mortgage.” Instead, she alleged the husband was parsing the trial court’s earlier instructions to mean that those fees “which were due Ronald Austin prior to April 30 may be applied [to the mortgage], but anything after April 30 and prior to the date of the hearing [was] not to be applied to the mortgage,” and that he was “attempting to keep $16,000 from being applied to the mortgage.” She also claimed the “total amount due Ronald Austin and/or Austin and Austin from JTA [was] approximately $21,000,” and that “[t]he amount to make the mortgage current [was] approximately $23,615 which must be paid by the end of February or the Bank’s offer to reinstate the mortgage would be withdrawn.” The wife went on to plead that she was “in desperate need of February support, together with [the] approximately $21,000 in funds from JTA in order to avoid losing the substantial equity in the home.” Accordingly, she asked for entry of an order “granting [an] immediate emergency hearing or otherwise clarifying the Court’s ruling as to ... whether the entirety of the JTA funds in escrow, up to the date of the ruling on January 25, 2013[sic], [was] to be applied to the mortgage on the jointly held marital home.”
At the ensuing hearing on the wife’s motion, however, the wife’s attorney informed the trial court that he had, just the night before, been informed by JTA that it did not owe any further attorney’s fees, and his current calculation was that $28,000 was needed to reinstate the mortgage. This revelation, along with the additional announcement that the homeowners’ association had placed a lien on the home, prompted the trial court to change its focus to the “real” issue of “getting all these bills caught up[J” Accordingly, it asked the wife’s attorney what the wife was requesting, and counsel responded that the wife would like as much paid towards the $28,000 owed on the mortgage as possible. Counsel noted that the wife had $6000 on hand, and claimed the husband possessed over $18,000 in a deferred compensation fund he had opened when he previously worked for the state. The husband also had approximately $4000 in an IRA account. Counsel then claimed that the husband’s wine collection was worth approximately $55,000, and he possessed other valuables which, if liquidated, would supply additional funds. Counsel asked that the husband pay as much of the $28,000 as he could, and requested the trial court to instruct the husband to sign an authorization to allow him to speak to the husband’s accountant.
The husband’s attorney objected to that last request on the basis it had not been noticed for hearing. She then asked that nothing in the trial court’s ensuing order should concern JTA, since the court did not have subject matter jurisdiction over “the JTA monies.” She also requested that the trial court not order the husband “to sell everything” he had, and force him to dip into his retirement to make up the mortgage deficiency in order to save the house, which, she suggested, should be sold. Husband’s counsel objected to the direction the court was taking on the basis that ordering the husband to sell his assets to pay the mortgage deficiency had never been pled by the wife.
After listening to both parties — the husband testifying that his retirement account was worth $18,504, and his IRA was worth $3,992.40; the wife testifying that she had $6000 in a bank account — the trial court announced its intention to order “whatever accounts and monies that [were] available on both parties be liquidated to catch up the mortgage and catch up these outstanding expenses.” That meant, “18 from him, 6 from her,” and the trial court then asked, *673 “What else?” Attention turned to the husband’s wine collection, with the court guessing the collection could be liquidated up to “at least $4000,” and authorizing the wife to accomplish the sale. For her part, the wife offered up her dining room furniture and asked the court for additional authorization to work with the mortgage company. Once everything was placed on the table, the trial court announced its ruling:
So the Court’s order is that the 18,504 will be used. The Wife is going to give the 6000. The wine collection will be liquidated. Accounting will be done and provided to the Husband, and all those monies will be used to catch up the mortgage and to catch up the outstanding bills. Anything leftover [sic] will be held in trust, and the Wife is authorized to sell the dining room set to catch up the bills. I will grant the request to have the Husband sign authority for her to talk to the mortgage companies—
[[Image here]]
... — so that she can try to negotiate something with them, and I think the JTA issue is moot now....
The wife’s attorney added that should any money materialize from JTA, he asked it be escrowed with either him or the husband’s attorney. At this point in the proceedings, the husband’s attorney objected, again arguing that the trial court did not have subject matter jurisdiction over the corporations. Further, at the conclusion of the hearing, she reminded the trial court, “for the record,” that the husband had objected to the direction the hearing had taken and that he was “not trying it by consent ... since it wasn’t pled.”

THE ORDER

In its Order on Wife’s Motion for Emergency Relief, the trial court acknowledged it “had previously ordered certain funds to be used to bring the marital home out of foreclosure [but][t]hose funds did not materialize as anticipated by all parties.” It also acknowledged that testimony taken at the hearing revealed other assets “that may be used to save the home,” but noticed the husband’s objection to that option and his request that the court order the sale of the marital home, which the court declined to do “at this juncture.” The trial court further considered the husband’s argument that “Due Process require[d] the issue of the foreclosure not to be heard as it was not properly noticed,” but ruled “[t]he parties were on notice that the nature of the emergency was foreclosure of the home. Therefore, any and all actions taken at the hearing to eliminate that emergency[,] i.e.[,] foreclosure, would be properly considered at the noticed hearing.” In addition, the trial court conceded the money anticipated for past attorney’s fees from JTA would “apparently not be received,” and, thus, the application of those fees to the mortgage indebtedness was “a moot point.” Nonetheless, the court directed that “[s]hould such fees for services rendered before or after April 30, 2012 up to the date of the prior hearing, January 14, 2013 materialize, said funds shall be escrowed with the attorney for either the husband or the wife pending further Court hearing.” Accordingly, the trial court ordered the husband to liquidate his State of Florida deferred compensation fund and his IRA, and apply those monies to the outstanding mortgage indebtedness.
The trial court also authorized the wife to liquidate the parties’ wine collection and apply the proceeds to the mortgage. In addition, she was ordered to apply the approximately $6000 in her bank account toward the mortgage and the homeowners association delinquency, and to sell her *674 dining room furniture and likewise apply those funds to the mortgage. The court reserved jurisdiction “to apply the funds ordered liquidated herein to or against either party in an equitable distribution of the parties’ assets and liabilities.” It further reserved “for subsequent consideration the question of subject matter jurisdiction over the distribution of any funds received from the [JTA] by the Austin & Austin and/or Ronald Austin Law Firm, taking that matter under advisement. Instead, it reiterated that “should any fees for services rendered to JTA before or after April 30, 2012 and up to the date of the prior hearing, January 14, 2018 materialize, said funds shall be escrowed with the attorney for either the husband or the wife pending further Court hearing.” This appeal ensued.

ANALYSIS

In his first point challenging the trial court’s order, the husband argues the trial court lacked personal jurisdiction over his law firm, as it was not made a party to the action, and, therefore could not escrow fees owed to the firm. He also argues the court lacked subject matter jurisdiction over attorney’s fees paid to a non-party corporation by another non-party corporation, JTA. Generally speaking, while a family-owned business is considered a marital asset subject to equitable distribution, see, e.g., Esposito v. Esposito, 651 So.2d 1248, 1249 (Fla. 2d DCA 1995), a trial court does not have the power to order the transfer of corporate property or assets without joinder of the corporation. See Mathes v. Mathes, 91 So.3d 207, 208 (Fla. 2d DCA 2012); Sandstrom v. Sandstrom, 617 So.2d 327, 328 (Fla. 4th DCA 1993); Keller v. Keller, 521 So.2d 273, 276 (Fla. 5th DCA 1988); Ashourian v. Ashourian, 483 So.2d 486, 486 (Fla. 1st DCA 1986). On the other hand, a trial court has the power to value and distribute corporate stock determined to be a marital asset, Mathes, 91 So.3d at 208, and “may preclude the husband’s disposal of assets over which he exercises exclusive control, without the necessity of joining the various corporations as parties.” Ashourian, 483 So.2d at 487. That, however, is not what the trial court attempted to do by its current order. The trial court did not make a finding as to whether the anticipated attorney’s fees were marital or non-marital or whether the wife had a special equity in same. Nor did the court find that escrow-ing the (anticipated) forthcoming fees would be squandered by the husband. Moreover, the trial court’s directions concerning the escrowing of fees were, at best, tentative, as it was acknowledged that, at the time of the order, no attorney’s fees were due and owing by JTA to the husband’s law firm. Indeed, the trial court ! expressly considered the issue “moot.” Consequently, rather than reversal, as. there appears to be nothing adverse to the husband requiring reversal on this subject, we consider the more judicious approach toward avoiding any jurisdictional issue is simply to strike the portion of the order directing the escrowing of fees from JTA as mere surplusage.
In his second point, the husband argues the trial court abused its discretion by ordering the liquidation of his assets when that remedy had not been pled in the wife’s Motion for Emergency Relief. On this point, we agree with the husband. The wife’s motion focused solely on the anticipated attorney’s fees from JTA to pay the mortgage arrearage; nothing in her motion sought alternative funds from other sources, least of all, the husband’s assets, one of which may or may not be nonmarital. While we sympathize with the trial court’s concern that the foreclosure of the parties’ home would result in the loss of substantial equity, the dictates of proce *675 dural due process demand that a party be placed on notice and given a meaningful opportunity to be heard before being divested of his or her property. “ ‘It is well settled that an order adjudicating issues not presented by the pleadings, noticed to the parties, or litigated below denies fundamental due process.’ ” Norberg v. Norberg, 79 So.3d 887, 889 (Fla. 4th DCA 2012) (quoting Neumann v. Neumann, 857 So.2d 372, 373 (Fla. 1st DCA 2003)). Accord Mondello v. Torres, 47 So.3d 389, 397 (Fla. 4th DCA 2010) (“[A]s a general rule, a violation of due process occurs when a court determines matters not noticed for hearing and not the subject of appropriate pleadings.”); Mizrahi v. Mizrahi, 867 So.2d 1211, 1213 (Fla. 3d DCA 2004) (“Due process protections prevent a trial court from deciding matters not noticed for hearing and not the subject of appropriate pleadings.”); Cooper v. Cooper, 406 So.2d 1223, 1224 (Fla. 4th DCA 1981) (holding that a judgment based outside the pleadings cannot stand).
Section 61.075(5), Florida Statutes (2011), does not authorize the trial court’s action here, contrary to the wife’s urging. This section provides in pertinent part as follows:
If the court finds good cause that there should be an interim partial distribution during the pendency of a dissolution action, the court may enter an order that shall identify and value the marital and nonmarital assets and liabilities made the subject of a sworn motion, set apart those nonmarital assets and liabilities, and provide for a partial distribution of those marital assets and liabilities.
The wife’s argument disregards the portion of the above-quoted statutory language requiring that the marital and non-marital assets subject to an interim partial distribution be “made the subject of a sworn motion.” (Emphasis added.) In this case, not only was the wife’s motion not sworn, but it did not reference the husband’s assets that were ultimately made the subject of liquidation and distribution by the interim order. Nor, again, did the trial court make any effort to identify which assets were marital and which were nonmarital. Where a party’s private property is at stake, the simple fact, according to the trial court, that “the parties were on notice that the nature of the emergency was the foreclosure of the home,” would not justify, as the court further observed, “any and all actions taken at the hearing to eliminate that emergency. ...” Cf. Carmona v. Wal-Mart Stores, E., LP, 81 So.3d 461, 464 (Fla. 2d DCA 2011) (“To be sufficient, the notice must be ‘reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections). The notice must ... convey the required information, and it must afford a reasonable time for those interested to make their appearance.’ ’’(quoting N.C. v. Anderson, 882 So.2d 990, 993 (Fla.2004) (some internal quotation marks omitted)). In the instant case, the husband was wholly without notice that his State of Florida deferred compensation fund, his IRA, and his wine collection would be subject to liquidation in order to reinstate the mortgage. Consequently, it was an abuse of the trial court’s discretion to order him to do so.
For the reasons articulated, portions of the Order on Wife’s Motion for Emergency Relief are struck, and the remainder of the order is REVERSED.
THOMAS, and ROWE, JJ., concur.

 See Art. V, § 4(b)(1), Fla. Const. (granting to district courts of appeal jurisdiction to "review interlocutory orders ... to the extent provided by rules adopted by the supreme court”); Fla. R.App. P. 9.130(a)(3)(C)(ii) & (iii) (providing for appeal to the district courts of appeal of non-final orders that determine "the right to immediate possession of property” and "the right to immediate monetary relief ... in family law matters”).