# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-0446
Lower Tribunal No. 2018-CA-002531-XX

_____

PETRO WELT TRADING GES.M.B.H, PETRO WELT TECHNOLOGIES GMBH f/k/a PETRO WELT TECHNOLOGIES AG, TRADING HOUSE KATOIL, LLC, KATKONEFT, LLC, KATOBNEFT, LLC, and KATOIL-DRILLING, LLC,

Appellants,

v.

EDWARD BRINKMANN, MAJAB DEVELOPMENT, LLC, and DOES 1–10,

Appellees.

_____

Appeal from the Circuit Court for Collier County.
Elizabeth V. Krier, Judge.

November 8, 2024

MURPHY, J.L., Associate Judge.

Edward Brinkmann is accused of embezzling millions of euros from foreign oil companies.[1] After a hostile takeover and some jousting in foreign arenas, the oil companies filed suit in Collier County, where Brinkmann lived. The trial court eventually granted summary judgment in favor of Brinkmann and his real estate

_____

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

company, Majab Development, LLC, for lack of "jurisdiction" and forum non conveniens—even though neither Brinkmann nor Majab raised those arguments. The trial court also granted summary judgment for Brinkmann and Majab on the merits of counts I through IX of the complaint. Damages were a focus, with the trial court concluding it was "impossible" for the appellants to prove compensable harm. Finally, the trial court dismissed count X for forum non conveniens, finding "Florida is not the most convenient forum" for the claim.

The oil companies raise fifteen points of error. We agree with many of them. Because the trial court deprived the oil companies of due process, weighed evidence on summary judgment, canonized a foreign criminal investigative report, and abused its discretion by dismissing count X for forum non conveniens, we reverse.[2]

## I

### A

Brinkmann's mother founded Petro Welt Technologies AG, an Austrian holding company.[3] AG hired Brinkmann in 2006, eventually promoting him to

---

[2] Because Brinkmann and Majab did not cross-appeal the order granting summary judgment on their counterclaims, we do not address that portion of the order. The same goes for the trial court's dismissal of the Doe defendants.

[3] Petro Welt Technologies AG was formerly known as C.A.T. Oil AG. The parties have referred to the entity as "AG" or "PeWeTe." For ease and consistency, we refer to it as "AG." Because we generally need not distinguish between the

create and oversee a new international asset procurement process for AG's operating subsidiaries, which are Russian oil-drilling companies. Brinkmann designed the new procurement process, which AG's boards approved, and he exercised almost unilateral control over the purchasing decisions and mechanics of the deals.

Those mechanics are complicated, but the minutiae are unnecessary to resolving this appeal. Essentially, Brinkmann would negotiate the terms of an asset acquisition and arrange for the asset's delivery to the appropriate operating subsidiary through a number of hand-offs between corporate affiliates and consultants. Each hand-off involved an additional markup over the originally negotiated price. Despite the many markups, the new procurement process was profitable.

In 2014, ownership of the oil companies changed hands in a hostile takeover. The new owners alleged that the Brinkmann-designed markups were created to siphon millions of euros in corporate profits to shell companies controlled by his mother. Around this time, Brinkmann moved to Collier County and opened Majab, a Florida limited liability company—ostensibly for real estate development. But the oil companies argued that Brinkmann and his mother used it to launder the procurement scheme's ill-begotten proceeds. Their experts pointed to large

appellants to resolve this appeal, we refer to them collectively as the "oil companies."

3

transactions between Majab and Brinkmann's mother, Brinkmann's personal use of Majab's funds, and other indicia of fraud.

After the hostile takeover, Brinkmann resigned from AG. Though his employment contract required him to return company property, Brinkmann deleted his AG emails to prevent the new owners from reviewing them. He also instructed subordinates to delete other AG email accounts. Among the data wiped from company servers were two files titled "Hard Sun – Cat Gmbh us$ EB 280113.doc" and "Hard Sun – Cat Gmbh us$ EB 300113.doc." Hard Sun was one of the companies allegedly used to impose unnecessary markups.

Unsurprisingly, the international intrigue spawned international litigation. Of note, an Austrian criminal prosecutor conducted a three-year investigation of the procurement scheme and related conduct. Brinkmann contended this investigation was retribution from the oil companies' new owners. Eventually, the Austrian prosecutor issued a report declining to bring criminal charges.

**B**

In 2018, the oil companies sued Brinkmann and Majab in circuit court. The third amended complaint contained ten claims alleging fraudulent and criminal conduct.[4] Early on, Brinkmann and Majab moved to dismiss the first nine claims for

---

[4] The ten claims are (1) fraud; (2) unjust enrichment; (3) conversion; (4) civil theft under section 772.11 of the Florida Statutes; (5) fraudulent transfer; (6) violation of the Florida Racketeer Influenced and Corrupt Organization Act, sections

4

forum non conveniens. The trial court denied the motion. When the oil companies added the final claim for breach of contract in the third amended complaint, Brinkmann again moved to dismiss it for forum non conveniens. About the same time, Brinkmann and Majab also moved for summary judgment on the original nine claims.

Three months before the first summary judgment hearing, the oil companies filed a spoliation motion alleging Brinkmann intentionally destroyed evidence. One of the oil companies' expert reports concluded that Brinkmann and other associates intentionally wiped 71,000 files and 37 email accounts from servers. Though set for hearing in early 2022, the trial court canceled the spoliation hearing after granting summary judgment for Brinkmann and Majab on all ten claims and alternatively dismissing count X for forum non conveniens.

The order covers much ground. At the outset, the trial court determined it lacked "jurisdiction" over the claims—an argument neither party had raised—because the claims "belong in Austria and/or Germany." The basis for this jurisdictional finding was murky, though it contained hallmarks of a forum non conveniens analysis. The trial court next found the oil companies waived their

_____

895.01 to 895.06 of the Florida Statutes; (7) conspiracy to commit civil violations of Florida RICO; (8) violation of the Florida Civil Remedies for Criminal Practices Act, section 772.103 of the Florida Statutes; (9) conspiracy to commit violations of the FCRCPA; and (10) breach of contract.

5

objection to the Austrian prosecutor's report by "fil[ing] and encourag[ing] the Court to rely on evidence and statements made by various witnesses clearly taken and considered by this prosecutor in said [r]eport." Over the oil companies' objection, the trial court elected to "consider" the report, finding it "well researched and valuable to the Court" because its findings "impact certain of Plaintiffs' causes of action that alleged criminal or quasi-criminal activity." The trial court used the report to diagnose "weaknesses" in the oil companies' expert opinions that compelled summary judgment for Brinkmann and Majab. Finally, the trial court found the oil companies failed to present evidence of domestic harm, making it "impossible" to prove their claims.

## II

We review de novo claimed deprivations of due process, orders granting summary judgment, and questions of personal or subject matter jurisdiction. *See Pial Holdings, LTD v. Riverfront Plaza, LLC*, 379 So. 3d 547, 550 (Fla. 6th DCA 2024) (reviewing de novo order granting summary judgment); *Ag. for Health Care Admin. v. Payas*, 372 So. 3d 787, 789 (Fla. 6th DCA 2023) (reviewing de novo question of subject matter jurisdiction); *Travel Ins. Facilities, PLC v. Naples Cmty. Hosp., Inc.*, 367 So. 3d 611, 615 (Fla. 6th DCA 2023) (reviewing de novo order finding personal jurisdiction); *Athienitis v. Makris*, 346 So. 3d 732, 734 (Fla. 2d DCA 2022) (reviewing de novo claimed deprivation of due process).

Orders dismissing claims under the doctrine of forum non conveniens are reviewed for an abuse of discretion, as are decisions declining to continue summary judgment hearings pending additional discovery. *See Martins v. PNC Bank, Nat'l Ass'n*, 170 So. 3d 932, 936–37 (Fla. 5th DCA 2015) (reviewing for abuse of discretion order denying continuance to complete discovery); *Caraffa v. Carnival Corp.*, 34 So. 3d 127, 129 (Fla. 3d DCA 2010) (reviewing for abuse of discretion order granting motion to dismiss for forum non conveniens). *See generally* Fla. R. Civ. P. 1.061(a) ("The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court.").

## III

## A

The oil companies first argue that the trial court deprived them of due process by granting summary judgment on counts I through IX for lack of "jurisdiction" or forum non conveniens, which Brinkmann and Majab did not raise as defenses or on summary judgment. We agree.

Due process is constitutionally required. Art. I, § 9, Fla. Const. It guarantees to every litigant "a real opportunity to be heard and defend in an orderly procedure, before judgment is rendered against him." *State ex rel. Gore v. Chillingworth*, 171 So. 649, 657–58 (Fla. 1936) (citations omitted). Part of that guarantee is the right of a litigant to fair notice that an issue will be raised at a hearing. *Barreiro v. Barreiro*,

7

377 So. 2d 999, 1000 (Fla. 3d DCA 1979). Thus, a court violates due process when it grants relief not requested by a party or not raised in the relevant pleadings. *Booth v. Hicks*, 301 So. 3d 369, 370–71 (Fla. 2d DCA 2020); *Austin v. Austin*, 120 So. 3d 669, 675 (Fla. 1st DCA 2013).

Brinkmann and Majab did not raise personal jurisdiction or forum non conveniens as defenses to counts I through IX or as reasons to grant summary judgment. So, the trial court denied the oil companies due process when it granted summary judgment on those grounds.[5] *See Hutchins v. Est. of Hutchins*, 49 Fla. L. Weekly D2028 (Fla. 6th DCA Oct. 4, 2024) (reversing order dismissing for lack of jurisdiction entered without notice and an opportunity to be heard); *Saenz v. Sanchez*, 373 So. 3d 1211, 1212 (Fla. 3d DCA 2023) (holding challenged order violated due

---

[5] Though the trial court concluded it lacked "jurisdiction" over the first nine claims, its analysis sounds in forum non conveniens, rather than jurisdiction. There is a fundamental problem with that approach: Forum non conveniens is not concerned with jurisdiction; it presupposes it. *See Cortez v. Palace Resorts, Inc.*, 123 So. 3d 1085, 1090 (Fla. 2013) ("[Forum non conveniens] comes into play only if the plaintiff has first obtained personal jurisdiction over each of the defendants in Florida by effecting service of process . . . ."); *Kinney Sys., Inc. v. Cont'l Ins.*, 674 So. 2d 86, 87 (Fla. 1996) ("Forum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere."). *But cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435–46 (2007) (allowing federal trial courts to dismiss under forum non conveniens without reaching threshold questions of subject matter and personal jurisdiction).

process because neither party requested the relief granted or noticed the underlying issues for hearing).

Subject matter jurisdiction is a different animal. Courts have an independent obligation to examine their jurisdiction and may raise subject matter jurisdiction sua sponte. *Riggins v. Clifford R. Rhoades, P.A.*, 373 So. 3d 655, 660 n.4 (Fla. 6th DCA 2023). Because of that obligation, independently assessing subject matter jurisdiction is not a denial of due process. That said, the jurisdictional analysis below was incorrect.[6] As Brinkmann and Majab concede, the trial court had subject matter

---

[6] The trial court may have been concerned with the extraterritorial application of the statutory claims. Some courts have held that extraterritorial application of a statute is an issue of subject matter jurisdiction. *See, e.g.*, *McBee v. Delico Co., Ltd.*, 417 F.3d 107, 120 (1st Cir. 2005) ("We hold that the Lanham Act grants subject matter jurisdiction over extraterritorial conduct by foreign defendants only where the conduct has a substantial effect on United States commerce."); *State v. Dudley*, 581 S.E.2d 171, 179–80 (S.C. Ct. App. 2003) (listing authorities and concluding that extraterritorial application of criminal laws is an issue of subject matter jurisdiction). *But see Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1367 (Fed. Cir. 2008) (stating territoriality requirement of the Patent Act "is an element of the claim that must be established to prove infringement, but not a requirement for subject matter jurisdiction"); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1143 (N.D. Cal. 2011) ("There is currently no clear consensus among the courts regarding whether the issue of the extraterritorial reach of the Copyright Act should be treated as a matter of subject matter jurisdiction, or should instead be treated as an element of a claim."). No party here argued, and the trial court did not address, the thorny issue of extraterritorial application as it relates to subject matter jurisdiction. Because the parties agree the trial court has jurisdiction over the claims, we do not address this question. *See Kountze v. Kountze*, 996 So. 2d 246, 251 (Fla. 2d DCA 2008) ("[T]he extraterritorial application of a statute is a separate, complex issue we do not address.").

9

jurisdiction over the oil companies' claims because they are actions at law in which the amount in controversy exceeds $15,000. Art. V., § 5(b), Fla. Const.; §§ 26.012(2)(a), 34.01(1)(c), Fla. Stat. (2018).[7]

**B**

The oil companies also argue that the trial court deprived them of due process by granting summary judgment on count I after Brinkmann withdrew this argument at the summary judgment hearing. Brinkmann contends he did not withdraw the point; he simply "did not argue" it. The record belies his position. At the summary judgment hearing, Brinkmann's attorney unequivocally stated that he "did not ask for summary judgment . . . on the fraud count" because the court "would find that there . . . may be a question that has to go to trial." He later confirmed the decision to drop count I: "Yes, Your Honor. I did not argue count I." The transcript cannot be read any other way; Brinkmann withdrew the argument and the trial court acquiesced.

---

[7] Because we conclude the trial court deprived the oil companies of due process by granting summary judgment on personal jurisdiction and forum non conveniens, we need not address those issues on their merits for counts I through IX. But we note that Brinkmann and Majab concede the trial court possesses general personal jurisdiction over them and that they waived the defense by failing to raise it and by actively participating in the case. *See Romellotti v. Hanover Amgro Ins.*, 652 So. 2d 414, 414 (Fla. 5th DCA 1995) (concluding failure to raise defense of lack of personal jurisdiction in the answer waived the defense).

A hearing is required before summary judgment may be granted. *See* Fla. R. Civ. P. 1.510(b). The trial court's decision to grant summary judgment on count I after Brinkmann declined to pursue relief is not only an error under the rule, but a fundamental deprivation of due process. *Hall v. Marion Cnty. Bd. of Cnty. Comm'rs*, 236 So. 3d 1147, 1153–54 (Fla. 5th DCA 2018).

**IV**

The oil companies next argue that the trial court improperly weighed evidence and assessed credibility when deciding the motion for summary judgment. We agree with this point, too.

Much has changed in Florida's summary judgment landscape. *See In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 74 (Fla. 2021) (adopting federal summary judgment standard). But one principle remains constant: Trial courts may not weigh evidence or assess credibility. If there is a "genuine dispute as to any material fact," the inquiry is over. *See* Fla. R. Civ. P. 1.510(a).

Yes, the new rule gives trial courts more latitude in ferreting out a "genuine dispute." For instance, a nonmovant can no longer survive summary judgment by presenting some metaphysical doubt or a scintilla of evidence that is "merely colorable" or "not significantly probative" on the disputed issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51 (1986); *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 76; *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018). And a court

11

may decline to adopt one party's factual position if it is so "blatantly contradicted by the record" that "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). But the general principle remains: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

The trial court failed to apply this principle by repeatedly weighing the evidence. In particular, the trial court consistently discounted the evidentiary value of the oil companies' expert reports. The summary judgment order refers to "experts" in quotation marks because the trial court had "not admitted this testimony as expert testimony." But Brinkmann and Majab never sought a *Daubert*[8] hearing, and the trial court never addressed whether the expert reports could be presented in an admissible form. *See* Fla. R. Civ. P. 1.510(c)(2). Absent exclusion under *Daubert* or a finding that the opinions could not be presented in an admissible form, the expert reports should have been considered on summary judgment. *See Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 325 (5th Cir. 2024) (allowing expert reports to be considered on summary judgment because plaintiffs "intend to rely on their experts' testimony at trial"); *Aleman v. City of Charlotte*, 80 F.4th 264, 277 n.5 (4th Cir. 2023) ("We note that, in summary judgment proceedings, a court may consider an

---

[8] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

expert report that would itself be inadmissible at trial where 'the party submitting the evidence shows that it will be possible to put the information into an admissible form.'" (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015))).

Initially, it seemed the trial court would honor that obligation. At the outset of the summary judgment order, the trial court *rejected* Brinkmann's challenges to the expert reports, suggesting they would be considered. But that is not what happened. Instead, the trial court discounted them because the experts "very clearly . . . were hired by the Plaintiffs," and their opinions were "not the result of an independent investigation as was the Austrian-Prosecutor's Report." Neither criticism was appropriate. *See generally Preston v. Cnty. of Macomb*, No. 18-12158, 2022 WL 4590573, at *32 n.28 (E.D. Mich. Sept. 29, 2022) (declining to evaluate party's position that hired expert's testimony was not credible because courts "[do] not evaluate a witness' credibility at the summary judgment stage" (citing *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019))).

The trial court then "identif[ied] certain weaknesses in these Opinions" by suggesting they (1) invade the province of the jury (an objection not lodged by Brinkmann or Majab); (2) "conflate[ ]" certain facts in their analysis; and (3) "do not consider or analyze" facts the trial court believed "to be more important to . . . any possible valid causes of action." Ultimately, the trial court decided to

"disregard[ ]" the experts' "gratuitous legal opinions." Hardly full consideration, as the trial court promised.

Brinkmann and Majab lean heavily on the trial court's statement that they are entitled to judgment as a matter of law even assuming the expert reports are uncontroverted. That passage, however, cannot be squared with the rest of the order or the trial court's analysis. Nor does it account for how the trial court weighed supposedly uncontroverted expert opinions against the Austrian prosecutor's report—repeatedly finding the latter more persuasive.[9] Plus, the trial court contradicted its own statement just a few paragraphs later, when it refused to

---

[9] We need not address the admissibility of the Austrian prosecutor report because of our more fundamental conclusion that the trial court improperly weighed evidence on summary judgment. It is enough to note that the trial court repeatedly relies on this report, and no authority supports the idea that the oil companies waived their objection to it. On remand, the trial court should carefully evaluate whether an uncertified, foreign report disclaiming criminal liability can be presented in an admissible form in a civil trial. *See* §§ 90.201, 90.202, 61.0401(3), Fla. Stat. (2022); *Dufour v. State*, 69 So. 3d 235, 254 (Fla. 2011) ("[T]aking judicial notice . . . does not allow the substance of the underlying materials to be entered into evidence without compliance with the rules of evidence."); *State v. Dubose*, 11 So. 2d 477, 481 (Fla. 1943) ("[A]n acquittal in a criminal prosecution does not constitute evidence of innocence in a subsequent civil action based upon the alleged criminal act . . . ."); *Nunez v. Gonzalez*, 456 So. 2d 1336, 1338 (Fla. 2d DCA 1984) ("It is well settled that a judgment of conviction in a criminal prosecution cannot be introduced into evidence in a civil action to establish the truth of the facts upon which it was rendered." (citing *Stevens v. Duke*, 42 So. 2d 361 (Fla. 1949))); *McDaniels v. State*, 388 So. 2d 259, 260 (Fla. 5th DCA 1980) ("Judicial notice . . . may not be used to dispense with proof of essential facts that are not judicially cognizable." (citing *Amos v. Moseley*, 77 So. 619 (Fla. 1917); *Moore v. Choctawhatchee Elec. Co-Op, Inc.*, 196 So. 2d 788 (Fla. 1st DCA 1967))).

consider part of the 194-page report authored by the oil companies' expert, Todd Lester. Despite attempts to buff out these flaws, the summary judgment order inescapably weighs evidence and assesses credibility.

V

Faced with these procedural deficiencies, Brinkmann and Majab contend that the trial court's improper weighing of evidence is not determinative because the trial court also decided, as a matter of law, that the oil companies could not recover damages. The oil companies argue that conclusion was faulty because they submitted evidence of compensable domestic and foreign harm. We again agree with the oil companies that the trial court erred in finding they could not prove damages.

The summary judgment order finds, verbatim, "There IS controversy as to the appropriate amount that should have been charged and how this was determined." If that is the case, and there is disputed evidence concerning the reasonableness or necessity of the markups, then there is a disputed issue of fact on damages. Indeed, the trial court acknowledged that if the Lester report is read in the light most favorable to the oil companies—as it must be at this stage—then the markups eventually transferred to Brinkmann and Majab would "reduce the pool for payments of dividends to private and public shareholders and possibly affect their share price." Those reductions are damages. *See In re All Am. of Ashburn, Inc.*, 805 F.2d 1515, 1518 (11th Cir. 1986) ("[A] suit for the recovery of the diminution of the

value of the stock caused by the tortious acts of either an officer or director or third person belongs to the corporation.").

We are not persuaded by the argument that damages belong only to the shareholders, to be asserted only in a derivative suit. That position conflates harm with remedy. Shareholders may bring a derivative suit only if the corporation refuses to act, and nobody contends the oil companies have not acted against Brinkmann and Majab. *See WLT Software Enters., Inc. v. Brooks*, 361 So. 3d 927, 932 (Fla. 2d DCA 2023); *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975) ("[W]here an injury is suffered by a corporation and the shareholders suffer solely through depreciation in the value of their stock, only the corporation itself . . . may maintain an action against the wrongdoer."). If there is a dispute over whether Brinkmann's actions deprived the oil companies of additional profit by overcharging markups—as the trial court found—then a genuine dispute of material fact exists as to damages.

Brinkmann and Majab go one step further, however, by arguing that summary judgment was appropriate because the oil companies failed to establish a causal nexus between the procurement process those companies approved and the damages they allegedly suffered. The oil companies' experts disagree. For example, the Lester report concluded that "at least €64.3 million euros [*sic*] lacked reasonable underlying support or other commercial justification . . . and, in my opinion, constituted

16

Unsupported/Excess Markups." The same report traced about €44.3 million of those unnecessary markups to transactions between Brinkmann-established third-party intermediaries and other companies controlled by Brinkmann and his mother. Lester then opined that those funds were transferred directly to Brinkmann, his mother, former associates, related companies, and Majab.

Now, Lester may be wrong. But that is for a jury to decide. The trial court erred by discounting the credibility of those expert opinions at this stage.[10]

**VI**

Count X is an outlier. Brinkmann did not move for summary judgment on this claim. Instead, he moved to dismiss it based on forum non conveniens. Nevertheless, the trial court appears to have granted summary judgment *and* dismissed the claim: "Summary Judgment or dismissal is hereby GRANTED regarding Count X in favor of Defendants because this Court does not have jurisdiction over this cause of action and/or Florida is not the most convenient forum for such."[11] Earlier, we recounted

---

[10] We need not reach the question of the application of the common law and statutory claims to extraterritorial damages. The record contains evidence of domestic harm, which the trial court did not consider. We therefore reverse due to the error of weighing the evidence and leave the legal question to remand.

[11] The order granting summary judgment could be construed as dismissing all ten claims under forum non conveniens, but Brinkmann argues that only count X was dismissed. We therefore proceed under that assumption, having disposed of the first nine claims in the preceding sections.

why sua sponte granting summary judgment for lack of jurisdiction was error; dismissing count X for forum non conveniens was equally incorrect.

An action may be dismissed under forum non conveniens if "a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida." Fla. R. Civ. P. 1.061(a). This standard is met when:

> (1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
>
> (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
>
> (3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
>
> (4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

*Id.*

Forum non conveniens preserves several interests, among them "avoiding a waste of resources (including resources already expended)." *Kinney Sys.*, 674 So. 2d at 94. Dismissing one-tenth of the oil companies' action against a Florida resident after years of litigation, reams of discovery, and doubtlessly vast expenditures of time and resources would—to put it mildly—defeat that goal. Dismissal is not appropriate "where the parties . . . have substantially completed discovery or are now ready for a Florida trial . . . ." *Id.*

18

Even if Brinkmann identified support in the record for dismissal, we would reverse because the trial court never analyzed whether Austria would serve as an adequate forum or possess jurisdiction over the entire action and all of the parties. *See* Fla. R. Civ. P. 1.061(a)(1), 1.061(a)(4). A court may not dismiss for forum non conveniens "where the alternative forum does not permit litigation of the subject matter of the dispute." *Kinney*, 674 So. 2d at 90 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Defendants must "'demonstrate that the alternative forum offers at least some relief,'" but Brinkmann did not present any such evidence, and the trial court never reached that conclusion. *Cortez*, 123 So. 3d at 1092 (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)).[12] *See generally Johnny's Pool Super Ctr., Inc. v. Foreverpools Caribbean, LLC*, 307 So. 3d 832, 835 n.1 (Fla. 3d DCA 2020) ("[G]enerally, an order denying a motion to dismiss for forum non conveniens will be reversed where neither the order nor the hearing transcript establishes that the trial court engaged in a meaningful analysis of the relevant, requisite *Kinney* factors."); *Sybac Solar AG, Co. v. Falz*, 174 So. 3d 383, 385–86 (Fla. 2d DCA 2015) ("[A] trial court abuses its discretion in denying a motion if the record does not indicate that the forum non conveniens factors were considered.").

---

[12] *Cortez* was abrogated on other grounds by *Askew v. Florida Department of Children & Families*, 385 So. 3d 1034 (Fla. 2024).

19

Indeed, Brinkmann's argument that he should be sued in a country other than where he lived when litigation began "is both 'puzzling' and 'strange.'" *Cardoso v. FPB Bank*, 879 So. 2d 1247, 1250 (Fla. 3d DCA 2004) (quoting *Sanwa Bank, Ltd. v. Kato*, 734 So. 2d 557, 561 (Fla. 5th DCA 1999)). Perhaps that is why Brinkmann does not seriously argue that the trial court was within its discretion to dismiss count X. In fact, his only argument is that the oil companies "failed to brief why the court abused its discretion in granting [the motion to dismiss] for forum non conveniens." To the contrary, the oil companies presented six arguments on this issue over five pages in their Initial Brief. Without any opposing substantive argument, we agree with the oil companies that the trial court abused its discretion when it dismissed count X under forum non conveniens.[13]

## VII

While obviously the product of painstaking labor, the summary judgment order is flawed. We reverse the order granting summary judgment for Brinkmann

---

[13] Rule 1.061(a) only allows for dismissal of "[a]n action" in favor of an alternate forum with jurisdiction over "the whole case." Fla. R. Civ. P. 1.061(a), 1.061(a)(1). Given the rule 1.061(a)(1) requirement that a foreign tribunal have jurisdiction over the "whole case," we doubt the rule allows dismissal of only one of ten concurrently asserted claims. *See DIRTT Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 555 (10th Cir. 2023) ("[C]ourts should consider convenience as it applies to the *entire case* when it analyzes the appropriateness of dismissal for *forum non conveniens*." (emphasis in original)). But we do not decide that question, since we reverse on other grounds.

and Majab on all ten claims in the third amended complaint and the order dismissing count X for forum non conveniens, along with the corresponding final judgment. Given those dispositions, we also reverse the order denying Plaintiff's Motion to Compel Defendant Brinkmann's Further Responses to PeWeTe's 1st Set of Request for Admission and Petro Trading's 2nd Set of Request for Production, and for Sanctions.[14] On remand, the trial court must assess whether the pending discovery and spoliation motions should be addressed. *See* Fla. R. Civ. P. 1.510(d); *Evans v. McCabe 415, Inc.*, 168 So. 3d 238, 240 (Fla. 5th DCA 2015). We do not pass on that question or the merits of those motions.

REVERSED and REMANDED for further proceedings.

TRAVER, C.J., and WOZNIAK, J., concur.

Chance Lyman and Richard G. Salazar, of Buchanan Ingersoll & Rooney, PC, Tampa, for Appellants.

Oleg Stolyar, of Loeb & Loeb, LLP, Los Angeles, California, Pro Hac Vice, for Appellants.

Kristie Hatcher-Bolin, of GrayRobinson, P.A., Lakeland, Gary M. Carman and Richard F. Danese, of GrayRobinson, P.A., Miami, and Adam Miller, of

---

[14] Because Brinkmann and Majab did not cross-appeal, we do not address the order denying Defendant's Motion to Compel or in the Alternative to Preclude Affidavits. We also do not address count I of Brinkmann's counterclaim. Though the oil companies contend that the trial court granted partial summary judgment on this claim, it appears, at footnote 205 of the order, that the trial court concludes that this claim is moot. That inference is supported by language in the final judgment dismissing count I of the counterclaim, rather than entering judgment on it.

GrayRobinson, P.A., Orlando, for Appellee, Edward Brinkmann and Majab Development, LLC.

No Appearance for Appellee, Does 1–10.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED